IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>            **Plaintiff,**<br><br>    vs.<br><br>**ANTHONY JOSEPH HAMMER,**<br>            **Defendant.** | 4:22-cr-00075-ALM<br>**CASE NO: 4:22-MJ-114-KPJ** |

## ORDER OF DETENTION PENDING TRIAL

### Part I – Eligibility for Detention

Upon the

☒ Motion of the Government pursuant to 18 U.S.C. § 3142(f)(1), or

☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

The Court held a detention hearing and found that detention is warranted. This Order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II – Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** (*previous violator*): There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

   ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; or

   ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; or

   ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); or

   ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

☐ **(e)** any felony that is not otherwise a crime of violence but involves: (i) a minor victim; (ii) the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); (iii) any other dangerous weapon; or (iv) a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** (*narcotics, firearm, other offenses*): There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**:

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis.

OR

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III – Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven by:

⊠ clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

⊠ a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

Defendant Anthony Joseph Hammer ("Defendant") is charged with violating 18 U.S.C. § 875(c) (Interstate Communication of a Threat). The United States moved to detain Defendant pending trial.

The Court held a detention hearing on March 15, 2022. The United States was represented by Assistant United States Attorney Ryan Locker, and Defendant was represented by George Milner. The Court finds Defendant should be detained.

The United States contends there is a rebuttable presumption in favor of detention because, as the United States argues, Defendant is charged with committing a crime of violence. The Court disagrees. A rebuttable presumption in favor of detention arises if the charged offense is enumerated in 18 U.S.C. § 3142(e)(3) or 18 U.S.C. § 3142(f)(1). [1] *See* 18 U.S.C. § 3142(e)(2)–(3). If the offense is enumerated in subsection (f)(1), but not subsection (e)(3), the presumption arises only if the defendant was convicted of a federal offense described in subsection (f)(1), or a state or local equivalent, and the defendant committed such offense while released pending trial. *See* 18 U.S.C. § 3142(e)(2). Here, the United States argues Defendant committed a crime of violence, as enumerated under subsection (f)(1). However, there is no indication that Defendant was convicted of a predicate offense that he committed while released pending trial. As a result, the presumption in favor of detention does not apply in this case.

During the detention hearing, Special Agent Jeffrey Cotner ("Agent Cotner") of the Federal Bureau of Investigation ("FBI") testified regarding the investigation that resulted in Defendant's arrest. According to Agent Cotner, the FBI's investigation stemmed from an online threat made to the Anti-Defamation League ("ADL"). According to its website, the ADL is an "anti-hate organization that was founded in 1913 in response to an escalating climate of antisemitism and bigotry." *Who We Are*, ADL, https://www.adl.org/who-we-are (last visited March 17, 2022).

On or about July 28, 2021, the ADL received the following message: "come and find me. come after me. come hunt me down. this is me. this is really me. all of my info. I will kill all of you zionist pigs. 4th reich. Soon." Agent Cotner describes the "4th Reich" as a "hypothetical idea that refers to a possible resurgence of

---

[1] Subsection (f)(1) describes the following offenses:
    (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
    (B) an offense for which the maximum sentence is life imprisonment or death;
    (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
    (D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or
    (E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code.

*See* 18 U.S.C. § 3142(f)(1).

Nazi ideas." *See* Dkt. 1-1 at 6. [2] Agent Cotner testified the threat was submitted through ADL's website and listed Defendant as a point-of-contact. The FBI confirmed the IP address used to submit the threat belonged to GSL Health LLC, a business operated by Defendant. According to Agent Cotner, individuals employed by Defendant confirmed that he has, in the past, expressed antisemitic views.

On March 4, 2022, the FBI searched Defendant's home pursuant to a search warrant. The agents seized multiple firearms (including a tactical shotgun and multiple AR-15-style rifles), ammunition, body armor, a riot shield, a spear, a sword, and a long-bladed knife. The agents also recovered a holstered handgun from the center console of Defendant's vehicle. In Defendant's bedroom, officers found approximately $100,000 in cash. Additionally, the search produced numerous items exhibiting antisemitic and antigovernment sentiment. Agents also located a sticker-making device and related materials, which Agent Cotner testified Defendant used to create stickers to advocate against the Covid-19 vaccines. Other stickers found in the residence displayed antisemitic, antigovernment, and white supremacist rhetoric; it is unclear if these stickers were created by Defendant. Agents also found a spiral notebook, which contained the following handwritten statements: "get unvaxxed cops who won't submit to the jab on our side"; "burn DC to the ground"; and "return it to its swamp state." And agents found multiple shirts, sweatshirts, and hats of Defendant displaying Nazi symbols and propaganda.

Although Agent Cotner's investigation focused on the threat made to the ADL, Agent Cotner testified that Defendant is accused of threatening bodily harm to Pennsylvania Governor Tom Wolf and his staff. According to Agent Cotner, from November 5–13, 2020, Defendant made eight threats over a recorded telephone line to members of Governor Wolf's office, including multiple death threats directed toward Governor Wolf. Agent Cotner stated these threats are being addressed by authorities in Pennsylvania.

Agent Cotner further testified regarding Defendant's recent encounters with law enforcement. In November 2021, Defendant was approached by law enforcement regarding a September 2021 incident that took place in a local Starbucks. The Starbucks employees reported that a customer, who was upset that the employees were wearing masks, became aggressive, shouted derogatory comments, threw drinks over the counter, and threw a tip jar, which hit an employee in the knee. Agent Cotner testified that the customer departed the Starbucks in a vehicle registered to Defendant and that security footage indicated the customer had arm tattoos and a hairline similar to Defendant's. During the hearing, however, Agent Cotner testified he could not see, from his viewpoint, tattoos on Defendant's arms. Also in November 2021, Defendant was stopped for speeding; during the stop, Defendant failed to comply with law enforcement and is accused of attempting to bribe the officer. Defendant was tased, arrested, and charged with bribing an officer, speeding, and obstruction. In December 2021, Defendant was, again, tased during a traffic stop due to his failure to comply with law enforcement. Defendant was arrested and charged with resisting arrest. The November and December charges remain pending; Defendant was released on bond for both offenses.

Pretrial Services reports additional criminal charges. In 2009, the Harford County, Maryland, Sheriff's Office charged Defendant with assault and malicious destruction of property, for which Defendant was sentenced to probation. Defendant was also charged with resisting or interfering with arrest. That charge is "inactive" and "technically closed" according to United States Probation. In 2014, Washington, D.C., Metropolitan Police charged Defendant with assault on a police officer. Defendant completed a diversion program related to that charge.

According to Pretrial Services, Defendant reported the following substance abuse:

- Alcohol, used every two to three months from age 17 until three months ago;

---

[2] During the hearing, the Court took judicial notice of the facts alleged in the Affidavit in Support of Criminal Complaint (Dkt. 1-1). *See* FED. R. EVID. 201; *Polnac v. City of Sulphur Springs*, No. 4:20-cv-00666, 2021 WL 3663539, at *7 (E.D. Tex. Aug. 18, 2021) (mem. op.) (quoting *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018)) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.").

- Cannabinoids, used weekly beginning at age 17 and ending 18 months ago;
- Cocaine, used occasionally beginning at age 19 and ending 8 years ago;
- Heroin, used daily to every few months beginning at age 24 and ending 8 years ago; and
- Opiates, used occasionally beginning at age 19 and ending 12 years ago.

Defendant reported he completed a 50-day inpatient treatment program in 2015, a 28-day inpatient treatment program in 2015, and an outpatient treatment program in 2010.

Defendant's roommate and business partner, Alexander Heidt, testified as a willing third-party custodian. Mr. Heidt testified he met Defendant in Florida in 2016 and that Defendant is his best friend. Mr. Heidt moved from Florida to Texas on January 1, 2022, and has since resided with Defendant in a single family home leased by Defendant. Prior to residing with Defendant, Mr. Heidt and Defendant communicated once per week or once every other week. Mr. Heidt stated he was unaware of the threats made by Defendant to the ADL and to Governor Wolf, but that he would be extra vigilant if permitted to be Defendant's third-party custodian. Like Defendant, Mr. Heidt has a prior history of substance abuse. Mr. Heidt further testified he shares Defendant's political stances, but does not share Defendant's social stances.

The Court finds, based on the evidence presented, that no condition or combination of conditions would reasonably assure the appearance of Defendant as required and the safety of any other person and the community. The United States' Motion for detention is **GRANTED**. Defendant shall be detained pending trial.

In addition to any findings above or other findings made on the record at the hearing, the reasons for detention include the following:

- ☒ Weight of evidence against the defendant is strong
- ☒ Subject to lengthy period of incarceration if convicted
- ☒ Prior criminal history
- ☒ Participation in criminal activity while on probation, parole, or supervision
- ☒ History of violence or use of weapons
- ☒ History of alcohol or substance abuse
- ☐ Lack of stable employment
- ☐ Lack of stable residence
- ☐ Lack of financially responsible sureties
- ☒ Lack of significant community or family ties to this district
- ☐ Significant family or other ties outside the United States
- ☐ Lack of legal status in the United States
- ☐ Subject to removal or deportation after serving any period of incarceration

☐   Prior failure to appear in court as ordered

☐   Prior attempt(s) to evade law enforcement

☐   Use of alias(es) or false documents

☐   Background information unknown or unverified

☐   Prior violations of probation, parole, or supervised release

## Part III - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**So ORDERED and SIGNED this 21st day of March, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE